FILED
U.S. DISTRICT COURT

2008 JUL 29 PM 3:29

CLERK CAdams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| AUBREY BETTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-038 |
| | ) | |
| RALPH KEMP, Warden at Wheeler | ) | |
| Correctional Facility, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Wheeler Correctional Facility in Alamo, Georgia brought the above-captioned case *pro se* pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.[1]

---

[1] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he has no means by which to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay a partial filing fee. The Court notes that Plaintiff attempted to pay his $0.83 partial initial filing fee, by submitting two, $0.42 stamps. (Doc. no. 12). Nevertheless, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee. However, the Court cannot accept Plaintiff's stamps as payment for his partial initial

On May 27, 2008 Plaintiff submitted a motion to amend his complaint that was filed as an amended complaint.[2] (Doc. no. 8). As Plaintiff is allowed to amend his complaint as of right, it is this document that the Court will now screen.

## I. BACKGROUND

*Liberally* construing Plaintiff's amended complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Ralph Kemp, Warden at Wheeler Correctional Facility; (2) Robert Rosier, Deputy Warden at Wheeler Correctional Facility; (3) Charlotte Aldrich, Mailroom Clerk at Wheeler Correctional Facility; (4) Sarah Faulk, Mailroom Clerk at Wheeler Correctional Facility; (5) Ethel Handy, Officer at Wheeler Correctional Facility; (6) Unknown Officer, Officer at Wheeler Correctional Facility; (7) Unknown Female, Employee at Wheeler Correctional Facility; (8) Corrections Corporation of America; (9) Georgia Department of Corrections; and (10) James Donald, Commissioner of the Georgia Department of Corrections. (Doc. no. 8, p. 1).

Plaintiff's amended complaint sets forth allegations concerning gaining access to his mail, access to the courts, and alleged retaliation. (See generally doc. no. 8). Plaintiff explains that on February 3, 2008, on his way to recreation, he spoke to Defendant Rosier

---

filing fee. Thus, the **CLERK** is **DIRECTED** to return the stamps to Plaintiff.

[2]Plaintiff submitted an "Additional Statement of Claims and Clarification of Previous Claims" prior to filing his amended complaint. (See doc. no. 7). Plaintiff's additional statement of claims appears to simply "clarify" statements made in Plaintiff's original complaint. As the preferred method for amending a complaint is to include all allegations in one document, Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999), and Plaintiff subsequently submitted an amended complaint (doc. no. 8) comprised of all allegations, it is this document the Court will screen.

and asked him for permission and his approval for Plaintiff to receive several law books directly from the publisher. (Id. at 2). Defendant Rosier allegedly told Plaintiff to put his request in writing, but Defendant Rosier did not see why Plaintiff would not be able to receive the books, as they were coming directly from the publisher. (Id.). Plaintiff sent Defendant Rosier his written request. (Id.). In response Defendant Rosier wrote back:

> Let him know that he can do a release of funds and we will allow them to come in as long as they are pre-approved. If they are going to be given to him free of charge, then he can have them. However, if someone else pays for them, then they will not be allowed.

(Id.).

On February 8, 2008, Plaintiff wrote a letter to Defendant Kemp expressing his disagreement with Defendant Rosier's decision requiring that payment for the books be made from Plaintiff's prison account. (Id.). Plaintiff also wrote a letter to Defendant Donald and to the Corrections Corporation of America ("CCA") requesting their intervention.[3] (Id. at 3). Since writing these letters seeking clarification of Defendant Rosier's policy, Plaintiff has purportedly received literature regarding the Georgia Department of Corrections ("GDOC") standard operating procedure and the CCA's standard operating procedures. (Id.). In light of these materials, Plaintiff believes that Defendant Rosier has placed restrictions on inmates at Wheeler Correctional Facility that are not dictated in either the GDOC's or CCA's standard operating procedures. (Id.). Therefore, Plaintiff concludes that "it was indicated to me that Rosier had his own personal agenda and that it was not fair, nor [an] official policy." (Id.).

---

[3]CCA is a private contractor that runs Wheeler Correctional Institute.

3

Next, on April 4, 2008 Plaintiff was called to the mailroom by Defendants Faulk and Aldrich. (Id.). He was informed by these Defendants that he had received several law books but that he was not allowed to receive the publications as the prison law library contained copies of the publications he had received. (Id.).

On May 14, 2008, Plaintiff claims that he was taken out of his "electrical class" and was placed in segregation/isolation, by Defendant Rosier because, according to Plaintiff, the books he had received were not paid for by funds from his prison trust account. (Id.). Then on May 14, 2008, while being escorted to segregation/isolation by Defendant Rosier and an unknown officer, Defendant Rosier instructed the unknown officer to search Plaintiff's locker; Plaintiff accuses the unknown officer and Defendant Rosier of taking some of his legal documents noting, "a large portion of my legal documents were un-accounted for and missing [after the unknown officer purportedly searched Plaintiff's locker." (Id. at 4-5). Plaintiff states he remains in segregation/isolation, even though he has not been given a disciplinary report because, according to Plaintiff, he as not broken any rules. (Id. at 5).

Plaintiff alleges that on May 20, 2008 Defendant Rosier attempted to intimidate Plaintiff by stating, "[D]on't start filing grievances and writing[] the warden or I [will] personally see to it that you're locked down." (Id. at 6).

Plaintiff also complains that on May 9, 2008 he was forced to salute an inspection team. (Id.). He notes that the whole dorm is required to salute the inspection team, but that he has expressed, to various staff members, his desire not to participate. However, for fear of retribution, he has not filed any grievance. (Id.).

Finally, Plaintiff also makes various allegations that he is not receiving incoming

4

mail, nor is all his outgoing mail reaching its intended destination. (Id.).

## II. DISCUSSION

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 89-91 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 2978 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. Appx. 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating

5

suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

Here, Plaintiff admits that he has failed to complete the exhaustion process prior to filing suit, conceding that he has not presented the facts relating to his original complaint to the appropriate grievance committee. (Doc. no. 1, pp. 3, 4). In addition, most of the claims cited by Plaintiff in his amended complaint occurred after the instant lawsuit was filed. The complaint was signed by Plaintiff on April 7, 2008 and was filed by the Clerk of Court on April 10, 2008; most of the alleged incidents alleged in the amended complaint occurred in May of 2008.

It should be pointed out that the PLRA does not allow Plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156. Thus, in light of Plaintiff's admission that he failed to properly exhaust

administrative remedies, the instant complaint should be dismissed without prejudice.[4]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 27th day of July, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4]The Court recognizes that the Supreme Court recently held that under the Prison Litigation Reform Act, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 921 (2007). However, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Id. at 14; see also Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"). Therefore, because it is clear from the face of Plaintiff's complaint that he failed to exhaust his administrative remedies, the Court can properly recommend that Plaintiff's complaint be dismissed. See Anderson v. Donald, Civil Case No. 06-16322 (11th Cir. Jan. 8, 2008) (finding that the district court properly dismissed the plaintiff's complaint because the allegations in the complaint sufficed to establish that Plaintiff failed to exhaust his administrative remedies).